ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
gabriel.martinez2@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA | CASE NO. CR 13-00804 CRB |
|---|---|
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| MICHAEL NAVONE, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant MICHAEL NAVONE to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $5,000, a $200 special assessment, and no restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

//

# BACKGROUND

Defendant Michael Navone is charged with participating in bid rigging in San Mateo County beginning as early as February 2009 and continuing until in or about January 2011. He is charged with participating in bid rigging in San Francisco beginning as early as October 2009 and continuing until in or about January 2011. Navone was initiated into the conspiracy by Mohammed Rezaian, whom he had known while they both worked at California Mortgage Advisor, a mortgage brokerage. Subsequently, Rezaian invited Navone to work with him purchasing foreclosed properties at auction. Based on Rezaian's track record at the auctions, Navone approached potential investors and raised "approximately four million dollars from passive investors." These funds were held by an entity set up by Navone for the purpose of investing in foreclosed properties, Courthouse Steps II (CHSII). Investors included Navone's father, who supplied $500,000. Navone, Rezaian and two other partners split 50% of all profits made by CHSII from reselling properties. Presentence Report (PSR) ¶ 15.

When Rezaian and Navone purchased properties together, they vested properties in M&M Partners, LLC. Rezaian also created another entity, Maximo Management. Navone was not a partner in Maximo but was paid 30% of the profit from each investor he recruited. PSR ¶ 16.

When he began attending auctions, Navone became aware of bidders "paying each other to refrain from or to stop bidding at the auctions." Joseph Giraudo was the primary person negotiating the payoff agreements. It was known that Rezaian, Grinsell, Giraudo, Rosenbledt, and Cullinane worked together and were known as "the group" or "the big five." Giraudo made it known to Navone and others that in order for people to purchase property at trustee sales people would have to participate in payoff agreements to stop the bidding. PSR ¶ 17.

Navone became directly involved in negotiating payoffs in 2010. Working with Rezaian, Navone made agreements to stop bidding. He also made and received cash payoffs for not bidding on properties. For example, for the 1815 Edgewood property in Redwood City, Navone negotiated a $30,000 payoff for Rezaian, Rosenbledt and others with a confidential human source for them (and others) to stop bidding. For 67 Pennhurst in Daly City, Navone picked up a

$12,500 payoff for Rezaian and Grinsell for not bidding on this property from a confidential source and his "investor," an undercover FBI agent. PSR ¶ 18.

Navone profited from purchasing properties at rigged auctions. For example, for 1021 Rhode Island in San Francisco, purchased at a corrupt auction on October 5, 2010, Navone split $34,344 (20% of the total profit of $171,723.05) from the resale of this property with Rezaian and another conspirator. PSR ¶ 19.

On December 17, 2013, Navone was charged by information with bid rigging and mail fraud in San Mateo and San Francisco Counties. Dkt. No. 1. On March 20, 2014, Navone pleaded guilty and began cooperating with the government's investigation. Dkt. No. 11. On September 20, 2017, by stipulation Navone withdrew from his plea agreement and entered a new bid-rigging-charges only. Dkt. No. 36.

As stipulated in his plea agreement, Navone's volume of commerce is $2,908,337. PSR ¶ 20.

## ARGUMENT

### A. Sentencing Guidelines Calculations

#### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Navone's Criminal History Category is determined by the Court. Dkt. No. 36. The Presentence Report (PSR) calculates Navone's Criminal History Category as I, based on one criminal history point. PSR ¶¶ 38-41.

#### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 35. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 26-35. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

U.S.' SENT'G MEMO                                3
*United States v. Navone*, CR 13-00804 CRB

### 3. Fine and Restitution

The PSR calculates a fine range of $29,083 and $145,417, consistent with the plea agreement. PSR ¶ 78; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $5,000 and $50,000. Dkt. No. 36. In conjunction with its custodial recommendation, the government recommends a $5,000 fine. This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.

The parties have agreed in Paragraph 11 of the plea agreement to no restitution. Dkt. No. 36. This is based on evidence that defendant Navone did not keep any payoff money, but passed that money to a co-conspirator. PSR ¶ 21.

**B.    Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 30 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 8 months.

The timing, significance, nature and extent of Navone's cooperation warrant a 30 percent reduction. Navone entered his plea agreement pre-indictment on March 20, 2014, and immediately began cooperating in the investigation. His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Navone provided two candid interviews with the FBI. During his interviews, Navone provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements. Also during his interview, Navone provided information after viewing conspiracy documents and audio/video segments. Navone also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony. For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

### C. Sentencing Recommendation

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Navone's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background. A fine alone would not serve as an adequate deterrent in the absence of a custodial term. The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities. While Navone did not originate the conspiracy, he joined in willingly. PSR ¶ 20.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his minimal criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Michael Navone to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $5,000, a $200 special assessment, and no restitution.

Dated: April 19, 2018                         Respectfully submitted,

                                              /s/ GABRIEL MARTINEZ
                                              United States Department of Justice
                                              Antitrust Division